**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
MELISSA TATTA,  **22-cv-05907**

              Plaintiff,  **COMPLAINT**

   -against-

UNIVERSAL CREDIT SERVICES, INC., XACTUS, LLC (formerly known as CONSOLIDATED INFORMATION SERVICES SOLUTIONS, LLC), PERRY STEINER, GERALD HAFTMANN, JOHN DOE ENTITY # 1, JOHN DOE ENTITY # 2, JOHN DOE ENTITY # 3, JOHN DOE ENTITY # 4, and JOHN DOE ENTITY # 5,

              Defendants.
----------------------------------------------------------------X

Plaintiff, MELISSA TATTA ("Plaintiff"), as and for her Complaint against Defendants, UNIVERSAL CREDIT SERVICES, INC. ("Universal Credit"), XACTUS, LLC (formerly known as CONSOLIDATED INFORMATION SERVICES SOLUTIONS, LLC) ("Xactus"), PERRY STEINER ("Steiner"), GERALD HAFTMANN ("Haftmann"), JOHN DOE ENTITY # 1, JOHN DOE ENTITY # 2, JOHN DOE ENTITY # 3, JOHN DOE ENTITY # 4, and JOHN DOE ENTITY # 5 (collectively, "Defendants"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, Articles 6 and 19 of the New York Labor Law ("NYLL"), and Title 12, Part 142, of the New York Codes, Rules, and Regulations ("NYCRR"), to recover lost wages and other relief related to her employment with Defendants.

2. Jurisdiction over Plaintiff's FLSA claim is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

1

3.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claim that they form part of the same case or controversy.

4.  Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

5.  Plaintiff is an adult female who resides in the State of New York.

6.  Upon information and belief, Haftmann is an adult male who resides in the State of Pennsylvania.

7.  Upon information and belief, Steiner is an adult male who resides in the District of Columbia.

8.  Upon information and belief, Universal Credit is a foreign corporation authorized to conduct business in the State of New York.

9.  Upon information and belief, Xactus is a foreign limited liability company authorized to conduct business in the State of New York.

10. At all times hereinafter mentioned, JOHN DOE ENTITY # 1 is a fictitious name representing a presently unidentified entity believed to be Universal CIS, LLC, whose true identity is known to the named Defendants.

11. At all times hereinafter mentioned, JOHN DOE ENTITY # 2, JOHN DOE ENTITY # 3, JOHN DOE ENTITY # 4, and JOHN DOE ENTITY # 5 are fictitious names representing presently unidentified entities, whose true identities are known to the named Defendants.

12. Plaintiff intends to name each John Doe entity after learning their true identities. All John Doe entities named herein acted as employers and/or joint employers of Plaintiff. Plaintiff

reserves all rights to amend this Complaint to include the true names and capacities of the John Doe entities as soon as such information becomes known to Plaintiff.

**FACTS**

13. Universal Credit owned and operated a credit verification business.

14. Upon information and belief, Consolidated Information Services, Inc. ("CIS"), owned and operated a credit verification business.

15. Upon information and belief, in or about October 2020, Universal Credit and CIS merged and became known as Universal CIS.

16. Upon information and belief, in or about late 2021, Universal CIS merged into Consolidated Information Services Solutions, LLC.

17. Upon information and belief, in or about February 2022, Consolidated Information Services Solutions, LLC rebranded and changed its name to Xactus.

18. Upon information and belief, Haftmann was an owner, officer, director, shareholder, and/or managing agent of Universal Credit.

19. Upon information and belief, Haftmann was the President of Universal Credit.

20. Upon information and belief, Haftmann was the Chief Executive Officer of Universal Credit.

21. Upon information and belief, at all relevant times, Haftmann participated in running the daily operations of Universal Credit.

22. At all relevant times, Haftmann participated in the management and supervision of Plaintiff and her work for Universal Credit.

23. Upon information and belief, at all relevant times, Haftmann exercised operational control over Universal Credit, controlled significant business functions of Universal Credit,

determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Universal Credit in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

24. Upon information and belief, Haftmann was an owner, officer, director, shareholder, member, and/or managing agent of Universal CIS.

25. Upon information and belief, Haftmann was the President of Universal CIS.

26. Upon information and belief, Haftmann was the Chief Executive Officer of Universal CIS.

27. Upon information and belief, at all relevant times, Haftmann participated in running the daily operations of Universal CIS.

28. At all relevant times, Haftmann participated in the management and supervision of Plaintiff and her work for Universal CIS.

29. Upon information and belief, at all relevant times, Haftmann exercised operational control over Universal CIS, controlled significant business functions of Universal CIS, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Universal CIS in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

30. Upon information and belief, Haftmann is an owner, officer, director, member, and/or managing agent of Xactus.

31. Upon information and belief, Haftmann is the Vice Chairman of Xactus.

32. Upon information and belief, at all relevant times, Haftmann participated in running the daily operations of Xactus.

33. At all relevant times, Haftmann participated in the management and supervision of Plaintiff and her work for Xactus.

34. Upon information and belief, at all relevant times, Haftmann exercised operational control over Xactus, controlled significant business functions of Xactus, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Xactus in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

35. Upon information and belief, Steiner was an owner, officer, director, shareholder, and/or managing agent of CIS.

36. Upon information and belief, Steiner was the President of CIS.

37. Upon information and belief, Steiner was the Chief Executive Officer of CIS.

38. Upon information and belief, Steiner was an owner, officer, director, shareholder, member, and/or managing agent of Universal CIS.

39. Upon information and belief, Steiner was the Chairman of Universal CIS.

40. Upon information and belief, at all relevant times, Steiner participated in running the daily operations of Universal CIS.

41. At all relevant times, Steiner participated in the management and supervision of Plaintiff and her work for Universal CIS.

42. Upon information and belief, at all relevant times, Steiner exercised operational control over Universal CIS, controlled significant business functions of Universal CIS, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Universal CIS in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

43. Upon information and belief, Steiner is an owner, officer, director, member, and/or managing agent of Xactus.

44. Upon information and belief, Steiner is the Chairman of Xactus.

45. Upon information and belief, Steiner is the Chief Executive Officer of Xactus.

46. Upon information and belief, at all relevant times, Steiner participated in running the daily operations of Xactus.

47. At all relevant times, Steiner participated in the management and supervision of Plaintiff and her work for Xactus.

48. Upon information and belief, at all relevant times, Steiner exercised operational control over Xactus, controlled significant business functions of Xactus, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Xactus in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

49. Plaintiff is a former employee of Defendants.

50. Plaintiff was employed by Universal Credit from on or about January 2014 until it merged with CIS to form Universal CIS.

51. During this time, Universal Credit maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applied to her.

52. Plaintiff was then employed by Universal CIS until it merged with Xactus (then known as Consolidated Information Services Solutions, LLC).

53. During this time, Universal CIS maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applied to her.

54. Plaintiff was then employed by Xactus until on or about July 22, 2022.

55. During this time, Xactus maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applied to her.

56. From in or about January 2014 until on or about July 22, 2022, Defendants knowingly and willfully misclassified Plaintiff as an independent contractor, despite maintaining full control over the employment relationship with her.

57. Plaintiff was employed as a salesperson for Defendants' benefit and at their direction.

58. Plaintiff's primary job duty was to sell Defendants' financial services to their customers.

59. Defendants did not require Plaintiff to punch in or out of her daily shifts and did not require her to track her hours worked in any other way.

60. Upon information and belief, Defendants did not keep and maintain time records for the hours that Plaintiff worked each day and each week.

61. During her employment, Plaintiff worked Monday through Friday from about 8:00 a.m. until at least 7:00 p.m., and often later. Plaintiff also worked two to three hours per weekend.

62. Plaintiff typically worked at least fifty-seven (57) hours a week.

63. Plaintiff was paid on a commission only basis with a weekly draw.

64. Defendants did not pay Plaintiff overtime compensation for any of the hours she worked in excess of forty (40) per week at a rate of one-and-one-half times her regular rate of pay.

65. Defendants refused and failed to pay Plaintiff the commissions she earned during the final two weeks of her employment.

66. Defendants failed to provide Plaintiff with a wage notice at the time of her hiring or at any time thereafter, as required by NYLL § 195(1).

67. Defendants failed to provide Plaintiff with complete and accurate paystubs along with her weekly earnings, as required by NYLL § 195(3).

68. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in the decision to hire Plaintiff.

69. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in deciding the job duties that Plaintiff performed.

70. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in the supervision of Plaintiff's job duties and responsibilities.

71. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in setting Plaintiff's work schedules.

72. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in deciding the hours that Plaintiff worked.

73. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in deciding the manner in which Plaintiff was paid.

74. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in deciding the compensation Plaintiff was paid.

75. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in the decision to unlawfully misclassify Plaintiff as an independent contractor.

76. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Haftmann participated in running the day-to-day operations of each entity.

77. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in deciding the job duties that Plaintiff performed.

78. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in the supervision of Plaintiff's job duties and responsibilities.

79. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in setting Plaintiff's work schedules.

80. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in deciding the hours that Plaintiff worked.

81. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in deciding the manner in which Plaintiff was paid.

82. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in deciding the compensation Plaintiff was paid.

83. During Plaintiff's employment with Universal Credit, Universal CIS, and Xactus, Steiner participated in the decision to unlawfully misclassify Plaintiff as an independent contractor.

84. During Plaintiff's employment with Universal CIS and Xactus, Steiner participated in running the day-to-day operations of each entity.

85. Defendants managed Plaintiff's employment, including the amount of time she worked each week.

86. Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies during the respective time periods of Plaintiff's employment.

87. Defendants were aware of Plaintiff's work hours but failed to pay her the proper wages to which she was entitled under the law.

88. Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Plaintiff's rights, and Plaintiff has been damaged by such failures.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 201 *ET SEQ.*
## FAILURE TO COMPENSATE FOR OVERTIME

89. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

90. The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

91. Each entity named herein was and is subject to the overtime pay requirements of the FLSA because it was and/or continues to be an enterprise engaged in commerce or in the production of goods for commerce.

92. At all times relevant to this Complaint, the entities named had, and/or continue to have, two (2) or more employees handle goods or materials that have moved in interstate commerce, including Plaintiff who handled office supplies and other items that originated outside of New York and were used in New York.

93. Upon information and belief, the gross annual volume of sales made or business done by each entity named herein in the applicable year(s) was not less than $500,000.00.

94. Each entity named herein was and is subject to the overtime pay requirements of the FLSA because Plaintiff was individually engaged in commerce.

95. At all times relevant to this action, Plaintiff was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

96. Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

97. By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff overtime compensation as required by the FLSA.

98. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

99. However, none of the Section 13 exemptions apply to Plaintiff because she did not meet the requirements for coverage under the exemptions during her employment.

100. Defendants acted willfully and either knew that their conduct violated the FLSA or showed a reckless disregard for the matter of whether their conduct violated the FLSA.

101. Defendants did not act in good faith with respect to the conduct alleged herein.

102. As a result of Defendants' violations of the FLSA, Plaintiff incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees, and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW
## ARTICLE 6 AND 19
## FAILURE TO COMPENSATE FOR OVERTIME

103. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

104. At all times relevant to this Action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

105. Under New York law, an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA. 12 N.Y.C.R.R. § 142-2.2.

106. By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation as required by the NYLL and the Regulations pertaining thereto.

107. By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation for the time periods in which she worked in excess of forty (40) hours a week for Defendants.

108. Plaintiff was not exempt from the overtime provisions of the NYLL during her employment because she did not meet the requirements for any of the exemptions available under the NYLL.

109. Defendants acted willfully and either knew that their conduct violated the NYLL or showed a reckless disregard for the matter of whether their conduct violated the NYLL.

110. Defendants did not act in good faith with respect to the conduct alleged herein.

111. As a result of Defendants' violations of the NYLL, Plaintiff incurred harm and loss in an amount to be determined at trial, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

### COUNT III
### VIOLATION OF THE NEW YORK LABOR LAW
### ARTICLE 6
### FAILURE TO PAY WAGES
### As against Xactus, Haftmann, and Steiner

112. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

113. By the conduct alleged herein, Defendants have willfully failed to pay Plaintiff the commissions she earned during the final two weeks of her employment with Defendants.

114. Such failures have constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

115. Defendants have acted willfully and either knew that their conduct violated the NYLL or have shown a reckless disregard for the matter of whether their conduct violated the NYLL.

116. Defendants have not acted in good faith with respect to the conduct alleged herein.

117. As a result of Defendants' unlawful practices, Plaintiff has suffered a loss of wages.

118. As a result of Defendants' violations of the NYLL, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

## COUNT IV
## VIOLATION OF THE NEW YORK LABOR LAW
## NYLL SECTION 195(1)
## FAILURE TO PROVIDE WAGE NOTICES

119. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

120. Defendants willfully failed to furnish Plaintiff with wage notices during her employment, including the date of their hiring, as required by NYLL § 195(1), in English or in the language identified by the employee as his/her primary language, which were to contain, among other things, the employee's rate or rates of pay and basis thereof; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal

place of business, and a mailing address if different; the telephone number of the employer; and the employee's regular hourly rates of pay and overtime rates of pay.

121. Through their knowing and intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

122. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees provided by NYLL § 198(1-b).

## COUNT V
## VIOLATION OF THE NEW YORK LABOR LAW
## NYLL SECTION 195(3)
## FAILURE TO PROVIDE WAGE STATEMENTS

123. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

124. Defendants willfully failed to provide Plaintiff with complete, accurate, and written wage statements with her wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

125. Through their knowing and intentional failure to provide Plaintiff with accurate wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

126. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, by and through her attorneys, The NHG Law Group, P.C., demands judgment against Defendants and in favor of Plaintiff for a sum that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of the damages, costs of this action, and as follows:

- A. Declare and find that Defendants committed one or more of the following acts:

    1. Willfully violated provisions of the FLSA by failing to pay Plaintiff overtime compensation;

    2. Willfully violated the provisions of the NYLL by failing to pay Plaintiff overtime compensation and regular wages;

    3. Willfully violated the provisions of the NYLL by failing to provide Plaintiff with complete and accurate wage notices and wage statements;

- B. Award compensatory damages, including all unpaid wages owed, in an amount according to proof;

- C. Award liquidated damages under the NYLL, or alternatively the FLSA;

- D. Award statutory damages under the NYLL;

- E. Award interest on all NYLL unpaid wages due accruing from the date such amounts were due;

- F. Award all costs and attorneys' fees incurred in prosecuting this action; and

**[REMAINDER OF PAGE LEFT BLANK]**

      G.      Provide such further relief as the Court deems just and equitable.

Dated: Massapequa, New York
October 3, 2022

                              THE NHG LAW GROUP, P.C.

                              By: Keith E. Williams, Esq.
*Attorneys for the Plaintiff*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
keith@nhglaw.com
nhglaw@nhglaw.com